Opinion and Order
This Petition for Writ of Habeas Corpus seeks relief from this Court from an adverse contempt order issued by the Tribal Court on August 3, 2001.

Factual and Procedural History

On August 13, 2000, Petitioner Danny Nasingoetewa (herein ‘Petitioner’) was found by the Tribal Court to be the father of Manuel Ray Nasingoetewa, Byron Harris Nasingoetewa, Justin Ray Nasingoete-wa, and Serphina Dawn Nasingoetewa, and that he had a legal duty to support the four children.[1] The court ordered Petitioner to pay child support in the amount of $493.95 per month to Andrea Cuch, the mother of the children stated supra.[2] Despite proper notice, Petitioner failed to appear at the hearing.
On March 2, 2001, Andrea Cuch moved for an order to show cause as to why Petitioner should not be held in contempt for his failure to pay child support.[3] Petitioner was ordered to appear and answer the order on April 5, 2001. Petitioner did not appear. The court held Petitioner in contempt and issued a warrant for Petitioner’s arrest.[4] Petitioner was arrested and jailed on May 2, 2001.[5]
On August 3, 2001, Judge Gary LaRance, Chief Judge of the Hopi Tribal Court, ordered Petitioner to remain in jail in the Hopi Detention Facility for contempt of Court for failure to follow a Court Order requiring Petitioner to pay $2,463.70 in back child support. As part of the order, Petitioner was allowed to be released on work release on weekdays to relieve himself of the contempt from his earned income.[6]
On December 6, 2001, Petitioner filed a motion for status review/reconsideration. On January 27, 2002, Judge Leslie denied Petitioner’s motion. The court found that *422 the Petitioner’s history of disobeying court orders made it difficult to release him. However, the court advised Petitioner that if Petitioner devised or established a written plan to ensure he would pay the back child support, then he would be released.[7]

Issues Presented

1. Is the Tribal Court limited to using its criminal contempt power to enforce a Child Support Order under Ordinance 53?
2. Which contempt power did the Tribal Court use in this case?
3. Are there any limitations to the Tribal Court’s civil contempt powers?

Discussion

a. Does Ordinance 5J provide the cun it voith different contempt powers ?
Since the initial petition for child support was filed under Ordinance 53 [8], this Court will determine the Tribal Court’ authority by reviewing Ordinance 53. Pursuant to § 10(E) of Ordinance 53, the Tribal Courts is authorized to use its criminal contempt power under § 2.15.3 of Ordinance 21 to punish party for willful failure to comply with a court order.
However, this Court finds nothing in Ordinance 53 that limits the Tribal Courts to the use of its criminal contempt power. In the area of contempt, federal courts of general jurisdiction have held that they are endowed with three different contempt powers: 1) criminal; 2) civil; and 3) remedial.[9] The difference between these three contempt powers can be seen in their purpose. The goal of a criminal contempt order is to punish the disobedient party.[10] The purpose of a civil contempt order is to coerce the party into obeying the court order. Finally, with a remedial contempt order, the objective is to compensate the plaintiff for losses resulting from the defendant’s non-compliance by requiring the defendant to pay fines towards the plaintiff.[11]
The importance in distinguishing between a civil and criminal contempt order can be seen in the different procedures and requirements of each. With a criminal contempt order, the court is required to follow a criminal trial-like format.[12] § 2.15.3 is consistent with this requirement.[13] Generally, the second requirement of a criminal contempt order is that punishment be established by statute.[14] Again, § 2.15.4 is consistent with this requirement. On the other hand, the court’s civil contempt powder is not considered statute based. Rather, courts have generally held that “[a] court’s civil contempt *423 power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner.”[15] Thus, regardless of whether a statute authorizes a court to use civil contempt, it is to the court’s discretion whether such usage is appropriate. Further, unlike a criminal contempt order, a civil contempt order has no statutory limitation as to the extent of punishment issued by the court.[16] Courts have generally held that imprisonment until the contemnor complies with the court’s order is a permissible form of civil sanction for contempt.[17]
With respect to the ordinance at issue, § 10(E) of Ordinance 53 contemplates the possibility of the court using its discretion in molding the punishment or enforcement mechanism that is appropriate for the facts presented. The explicit language of § 10(E) list a number of different criminal provisions in Hopi Ordinance 21 that the court can use for willful failure to comply with a support order; further, the section also authorizes the use of “any other provisions appropriate under the facts of the case.” [18] Thus, we find that Ordinance 53 does not preclude the Tribal Court from the use of civil contempt to achieve the objectives of the Ordinance.

b. Which contempt power did the Tribal Court use to hold Petitioner in contempt?

In this case, the Tribal Court used its contempt power to detain Petitioner in the Tribal Jail until he complied with the Child Support Order. Clearly the purpose of the order was to coerce the Petitioner into complying with the Child Support Order. Based on the purpose of this order, it is transparent that the Tribal Court was using its civil contempt power.[19] § 2.15.4 of Ordinance 21 was intended to limit the Tribal Court’s use of criminal contempt; it was not intended to apply to the Tribal Court’s use of civil contempt. Thus, the Tribal Court is not limited by § 2.15.4 in this situation and has the discretion to determine the appropriate punishment in forcing the Petitioner to comply.

c. The limits of the. Tribal Court's civil, contempt power

The court’s use of civil contempt has limits. Though it is generally held that courts have the power to issue a civil contempt order that includes an indefinite jail term, such an order is permissible only as long as it is reasonable in coercing the disobedient party to comply. Thus, some courts have placed limitations on such an indefinite order. It is generally held that *424 where the civil contempt order is unable to force compliance or the disobeying party has expressed a clear intention not to comply with the court order, then there is nothing to coerce and thus the sanction is actually criminal.[20]
Applying this limitation to this case, it is clear to this Court that the Tribal Court’s civil contempt order is unable to coerced the compliance form Petitioner. Thus, it is clear to this Court that the initial order has turned punitive and requires the Tribal Court to comply with the limitations established for criminal contempt.

Conclusión

Based on the record, it is clear that Petitioner is either unable or unwilling to comply with the Child Support Order. Thus, the civil contempt order issued on August 3, 2001 has lost its ability to force compliance. The order has now turned criminal and the requirements under § 2.15.4 must be followed.
This case presents this Court with a difficult situation where there is no clear winner. Ultimately, the goal is to provide the children of Petitioner with some financial assistance for their upbringing. It is clear that the court’s civil contempt power is unable to attain this goal. However, the Tribal Council has provided Ms. Cuch with a number of alternatives in her attempt to force Petitioner’s compliance. Ms. Cuch can seek criminal charges against Petitioner under § 10(E) or move for an order to seize Petitioner’s property pursuant to S 10(F).[21]
In the case at bar, the record suggests that Petitioner is partly unable to fulfill the Child Support Order because of his limited ability to produce sufficient income. In such a situation, a modification of the original Child Support Order might be in the best interest of all parties involved.[22]

Order

The Contempt Order issued by the Tribal Court on August 3, 2001 is VACATED. Petitioner is no longer required to report to the Hopi Detention Facility. However, Andrea Cuch is free to file criminal charges against Petitioner under Ordinance 53, § 10 and/or request the Tribal Court to issue an order seizing the Petitioner’s property.

. See Petition for Establishment of Parentage and Child Support.

. Id.

. See Motion for Order to Show Cause (Failure to comply with child Support order)

. See Arrest Warrant.

. See Petitioner’s Petition for Writ of Habeas Corpus.

. See Court Order, August 3, 2001.

. See Minute Entry Order, January 27, 2002.

. Ordinance 53 is titled the JHopi Parental Responsibility Ordinance.

. See "Law of Remedies", Dan B. Dobbs, 1993, West Publishing Co., page 135.

. For this reason, criminal contempt orders usually take the form of a definite jail term or fine.

. See "Law of Remedies", Dan B. Dobbs, 1993, West Publishing Co., page 138

. Id. at 145-146.

. § 2.15.3 states that judge must give the arrested person an opportunity to make his defense or excuse, which is consistent with theories of due process and fairness. Only alter such an opportunity is offered to the offender is the court to decide whether to convict or discharge him.

. See "Law of Remedies”, Dan B. Dobbs, 1993, West Publishing Co., page 145-146.

. See Jones v. Lincoln Elec. Co., 188 F.3d 709, 737 (7th Cir.1999).

. Some federal courts have held that where the civil contempt order cannot coerce the party to comply over an extended period or the party clearly refuses to comply, then the civil contempt can turn into a criminal contempt order and the requirements of a criminal contempt order must be followed.

. See “Law of Remedies”, Dan B. Dobbs, 1993, West Publishing Co., page 135.

. See Ordinance 53, § 10(E).

. Some federal courts have also looked at whether the defendant is able to comply with the court order as a characteristic of a civil contempt order. If the defendant is unable to comply, then the contempt order is held to be punitive and thus considered a criminal contempt order. If the defendant is able to comply with the order then the order is considered coercive and civil in nature. In the case at bar, Petitioner theoretically have the ability to comply with the Support Order—Petitioner was able to pay portions of the monthly payments previously. Further, the contempt order only detained Petitioner at night and thus provided him the opportunity to produce income during the day.

. See "Law of Remedies”, Dan B. Dobbs, 1993, West Publishing Co., page 140-141.

. If found guilty of willful failure to comply with a court order, Petitioner faces the maximum sentence of $5000 or one year in the Tribal Jail or both, as provided under § 3.2.4 of Ordinance 21.

. Under Ordinance 53, § 11, either parent may petition the Court for a modification of the child support order if there is a change in circumstances. However, the parent’s ability to change past due support is very limited. There must be a showing of ‘insanity or lack of any legal, actual, or constructive notice of the award, that prevented the non-custodial parent from requesting a modification in the child support obligation.'